No. 19-3237

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

### ERIC S. CLARK,

**Plaintiff/Appellant**

v.

### CITY OF WILLIAMSBURG, KANSAS,

**Defendant/Appellee**

_____

### BRIEF OF APPELLEE

_____

**Appeal from the United States District Court for the District of Kansas**
**The Honorable Holly L. Teeter**
**Case No. 17-2002-HLT**

_____

J. Steven Pigg, #09213
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street
Topeka, Kansas 66606
(785) 232-7761-Office / (785) 232-6604-Fax
ATTORNEYS FOR DEFENDANT/APPELLEE
CITY OF WILLIAMSBURG, KANSAS

**ORAL ARGUMENT NOT REQUESTED**

{T0464798}

# <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** .................................................................... i

**TABLE OF AUTHORITIES** ........................................................... iii

**STATEMENT REGARDING PRIOR OR RELATED APPEALS** ........ vi

**JURISDICTIONAL STATEMENT** .................................................. 1

**STATEMENT OF ISSUES** ............................................................. 1

**STATEMENT OF THE CASE** ........................................................ 1

    **A. FACTS RELATED TO FIRST AMENDMENT CLAIM** ........ 1

    **B. FACTS RELATED TO FOURTH AMENDMENT CLAIM** ... 3

**PROCEDURAL HISTORY OF CASE** ............................................. 4

**SUMMARY OF THE ARGUMENT** ............................................... 5

**STANDARD OF REVIEW** .............................................................. 7

**ARGUMENT** .................................................................................. 7

    **I.   CLARK LACKS STANDING TO CHALLENGE ANY
           PROVISION OF THE CITY'S SIGN CODE OTHER
           THAN § 4.A.(6) OF ARTICLE 8** ......................................... 7

    **II.  THE DISTRICT COURT PROPERLY CONCLUDED
           THAT NO FOURTH AMENDMENT SEARCH
           OCCURRED** ...................................................................... 20

**CONCLUSION** ............................................................................. 29

**STATEMENT OF COUNSEL AS TO ORAL ARGUMENT** ............... 30

**CERTIFICATE OF DIGITAL SUBMISSION**........................................ **31**

**STATEMENT OF COMPLIANCE** ......................................... **31**

**CERTIFICATE OF COMPLIANCE** ..................................... **31**

**CERTIFICATE OF SERVICE** ................................................ **32**

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alvarez v. Montgomery County*, 147 F.3d 354 (4th Cir. 1998) ..................... 24

*Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298,
99 S.Ct. 2301 (1979) ..................................................................................... 11

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016)........................................ 16

*Burns v. Board of County Commissioners of Jackson County*,
330 F.3d 1275, 1280 (10th Cir. 2003) ............................................................ 7

*Carranza v. United States*, 526 F. App'x 882, 885, 2013 WL 2130882,
**2 (10th Cir. 2013) (unpublished)................................................................ 18

*Carroll v. Carman*, __ U.S. __, 135 S.Ct. 348 (2014)................................. 25

*Clapper v. Amnesty Int'l USA*, 560 U.S. 398, 408, 133 S.Ct. 1138,
1145 (2013) ............................................................................................... 8, 12

*Clark v. City of Williamsburg, Kansas*, 388 F. Supp. 3d 1346,
1355 (D. Kan. 2019) ....................................................................................... 9

*Dept. of Commerce v. United States House of Representatives,*
525 U.S. 316, 329, 119 S.Ct. 765 (1999)...................................................... 11

*Dias v. City and County of Denver*, 567 F.3d 1169, 1176
(10th Cir. 2009) ............................................................................................... 1

*D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) ..................................... 12

*Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280–83
(10th Cir. 2002)....................................................................................... 10-11

*Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3rd Cir. 2003).................... 23

*Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1415-16 (2013) ................... 22, 26

*Galindo v. Town of Silver City*, 127 Fed. Appx. 459, 466
(10th Cir. 2005) (unpublished)......................................................................... 23

*Granite State Outdoor Advertising, Inc. v. City of Clearwater, Florida*,
351 F.3d 1112, 1116 (11th Cir. 2003) .......................................................... 14

*Hardesty v. Hamburg Township*, 461 F.3d 646, 654 (6th Cir. 2006)............ 24

*Houston v. City, County of Denver, Colorado*, 268 F.3d 942, 947
(10th Cir. 2001) ................................................................................................ 7

*Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp.
2d 612, 627 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012)............. 13

*Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318,
33 L.Ed.2d 154 (1972) .................................................................................... 11

*Manzanares v. Higdon*, 575 F.3d 1135, 1143 (10th Cir. 2009)..................... 25

*Nat'l Council for Improved Health v. Shalala,* 122 F.3d 878,
882 (10th Cir. 1997) ................................................................................... 12, 14

*Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141,
1147 (10th Cir. 2009)....................................................................................... 18

*Phelps v. Hamilton*, 122 F.3d 1309, 1316 (10th Cir. 1997).................. 1, 14-16

*Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754-55 (1961) ............. 15

*Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312,
138 L.Ed.2d 849 (1997) .................................................................................... 8

*The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).......... 13

*United States v. Cavely*, 318 F.3d 987, 994 (10th Cir. 2003)................. 21, 23

*United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990)......................... 24

*United States v. Diaz*, 2009 W.L. 3675006, at \*2 (N.D. Fla. October 30, 2009, affirmed 404 Fed. Appx. 381 (11th Cir. 2010) (unpublished) ...................................................................... 23

*United States v. Dunn*, 480 U.S. 294, 301 (1987) ....................................21-22

*United States v. Edward J.*, 224 F.3d 1216, 1222 (10th Cir. 2000).............. 19

*United States v. Freeman*, 426 F.2d 1351, 1352-53 (9th Cir. 1970) ............. 24

*United States v. Garcia*, 997 F.2d 1273, 1279–1280 (9th Cir. 1993)............ 24

*United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013).....................21-22

*United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993)................. 18-19

*Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 481 (M.D. Pa. 2015).............. 13

*Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006)......................... 12, 16

## STATUTES

K.S.A. 25-2711 ....................................................................... 15

## OTHER

Fed.R.App.P. 10(c) .................................................................. 19

U.S. Const. Art. III ................................................................... 8

## STATEMENT REGARDING PRIOR OR RELATED APPEALS

There are no prior or related appeals concerning this case.

## JURISDICTIONAL STATEMENT

Appellee does not dispute appellant's statement regarding the statutory basis for subject matter jurisdiction. The appeal is from entry of summary judgment which became a final judgment after trial on denial of plaintiff's motion to amend judgment which was entered on September 25, 2019.

Appellee disputes Clark's claim of standing to assert his claims under the First Amendment. Standing is a jurisdictional prerequisite. *Dias v. City and County of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009); *Phelps v. Hamilton*, 122 F.3d 1309, 1316 (10th Cir. 1997).

## STATEMENT OF ISSUES

1.    Clark lacks standing to challenge any provision of the City's sign code other than § 4.A.(6) of Article 8.

2.    The Code Enforcement Officer's attempt to talk with Clark at his residence was not a search subject to the Fourth Amendment.

## STATEMENT OF THE CASE

### A.    Facts Related to First Amendment Claim

On February 23, 2015, Williamsburg Code Enforcement Officer Tony De La Torre sent a "Notice of Violation" of the City's sign ordinance to Eric Clark. (ROA at 239). The notice stated that Clark was in violation because he had "three large barrels, several signs, and other affixed objects" on the City's "right of way"

and asked that he remove items in the City's easement.  (ROA at 239).   The notice

informed Clark that a citation "may" be issued and the items removed if he did not

voluntarily comply.  (*Id*.).  Clark was directed to contact the City if he had

questions or believed he received the notice in error; otherwise, "actions will

continue toward resolution."  (*Id*.).

   Clark responded with a "litigation notice" to the Mayor and City Council.

(ROA at 152, 586-598).  The Mayor consulted with the City's attorney, who

advised the City to discontinue investigating Clark's violation.  (ROA at 467, 565).

De La Torre noted in his file that the City decided not to take any action on the

violation notice "at this time."  (ROA at 579).  De La Torre was a part-time

employee from 2013 until the City suspended the position because of budget

constraints on July 22, 2015.  (ROA at 526, 565, De La Torre dep. 13:8-22).  The

City has had no Code Enforcement Officer since.  (ROA at 565). The City did not

reappoint the Municipal Court Judge in May 2016 and has not had a functioning

Municipal Court since then.  (ROA at 566).  In a declaration filed August 9, 2018,

Mayor Horne confirmed that the City did not intend to enforce any provision of the

sign code during the pendency of this case.  (ROA at 566).

   On May 20, 2019, eleven days after the May 9, 2019 summary judgment

decision, the City formally withdrew the 2015 Notice of Violation and passed a

motion imposing a moratorium on enforcement of its sign code pending further analysis of the code.  (Aplee App. at 106; Trial Exh. 855).

### B.    Facts Related to Fourth Amendment Claim

Clark's house sits back from the road with a gravel driveway that extends from the road to the back of the house, where it widens into a gravel apron or parking area.  (ROA at 509, Clark dep. 45:12-21; ROA at 542, 543 and 545). Clark seldom uses the front door of his house and has trained his family members to go the back door when they visit.  (ROA at 463, 508).  The front door, which has no doorbell, is accessed by a front porch with steps up the front.  (ROA at 463-464).  A railing around the perimeter of the porch blocks entry except for the opening at the front step.  (ROA at 705, Clark dep. 36:20-37:3).  No sidewalk nor worn path to the front porch exists.  (ROA at 705, Clark dep. 36:7-11). Certain items on the porch partially block the entrance, or at least would have required a visitor to squeeze by them to get to the door.  (ROA at 714, Clark dep. 95:3-96:9; ROA at 745).  Vegetation blocked at least some of the entrance to the front porch. (ROA at 745).

On March 16, 2015, De La Torre went to Clark's property to discuss the Notice of Violation with Clark.  (ROA at 579, 529, De La Torre dep. 53:6-22).  De La Torre parked near the road, then walked up the driveway and saw that there was no path to the front door and that the door was blocked by items on the porch.  He

then heard someone in the back and started walking that way on the driveway. (ROA at 728, De La Torre dep. 54:4-15; ROA at 506, Clark dep. 32 :2-7).

At the rear of the house, Clark had hung sheets on ropes to form a ten-foot square canopy with fabric walls.  (ROA at 505, Clark dep. 28:9-16).  Clark could not see De La Torre when he first exited his rear door until after clearing the hanging sheets.  (ROA at 505-506, Clark dep. 28:17-18; 30:6-25). De La Torre was outside of the sheet enclosure.  (ROA at 505, Clark dep. 28:9-16). The back door was not visible to De La Torre from his location because of the sheets.  (ROA at 506, Clark dep. 31:3-6).

When Clark came out to encounter De La Torre, Clark was angry and told De La Torre to leave several times in the span of less than a minute.  (ROA at 728-729, De La Torre dep. 57:3-58:9).  Clark then returned to the house and De La Torre left.  (ROA at 729, De La Torre dep. 58:7-9).  De La Torre estimated he was on Clark's property for 3-4 minutes while Clark claims it was 5-6 minutes.  (ROA at 464, 857).

**Procedural History of Case**

Both plaintiff and defendant filed motions for summary judgment.  The District Court issued a Memorandum Decision on May 9, 2019.  The District Court concluded that Clark had standing to challenge § 4.A.(6) of the City's sign code which was the subject of the February 23, 2015 Notice of Violation and that

§4.A.(6) constituted a content-based regulation that did not pass strict scrutiny but which could be severed from the remainder of the sign code.  The District Court found that Clark lacked standing to challenge other provisions of the sign code.  (ROA at 1087-1091, 1099-1100).  The District Court granted summary judgment dismissing Clark's Fourth Amendment claim because De La Torre had not engaged in a search that exceeded the scope of an implied license to approach the residence to contact Clark.  (ROA at 1107).

Clark filed three motions to alter or amend the Court's summary judgment decision, which were denied.  (ROA 1160-1163).  Clark's First Amendment claim for damages based upon the finding that § 4.A.(6) constituted an unconstitutional content-based restriction on speech was tried to a jury. The jury returned a verdict that Clark had not suffered compensatory damages and awarded Clark $1 in nominal damages.  (ROA at 1164).

Clark filed a motion to amend judgment and for new trial pursuant to Rule 59.  That motion was denied on September 25, 2019.  (ROA at 1225-1231).  Clark filed a Notice of Appeal on October 16, 2019.  (ROA at 1232).

## <u>SUMMARY OF THE ARGUMENT</u>

Eric Clark created an eyesore at the entrance to the City of Williamsburg by placing three large barrels, several signs, multiple T-posts and other items on the City's right of way.  Clark received a single notice dated February 23, 2015

requesting that he remove the items.  He did not.  The City discontinued any effort to enforce any provision of its sign code against Clark. Within 11 days of the District Court's summary judgment decision, the City imposed a moratorium on any enforcement of the sign code.

Because Clark was never threatened with enforcement of any provision of the sign other than the restriction on signs and objects on the City's right of way, Clark did not suffer the injury-in-fact required for Article III standing to challenge those provisions.  Clark's subjective claim that he is chilled in placing signs is not supported or credible.  Regardless, Clark's purported subjective chill created by other sign code provisions is not objectively reasonable, precluding standing to challenge them.

The single visit of the City Code Enforcement Officer to Clark's residence in an attempt to discuss the items on the City's right-of-way with Clark, did not constitute a search governed by the Fourth Amendment.  De La Torre's perception that Clark's front door was disused was reasonable.  His attempt to contact Clark at the rear of his residence after hearing Clark did not encroach on any area isolated for privacy by Clark and was a reasonable approach to contact Clark by the customary route used by Clark's visitors.  De La Torre never entered a portion of Clark's residence upon which Clark had a reasonable expectation of privacy.  No Fourth Amendment search occurred.

The District Court's dismissal of Clark's Fourth Amendment claim and his First Amendment claims challenging provisions of the City sign code other than § 4.A.(6) should be affirmed.

## <u>STANDARD OF REVIEW</u>

A District Court's granting of summary judgment is reviewed *de novo*, applying the same legal standard used by the District Court. *Burns v. Board of County Commissioners of Jackson County*, 330 F.3d 1275, 1280 (10th Cir. 2003). In First Amendment cases, an appellate court has an obligation to independently examine the record to ensure that the judgment does not constitute a forbidden intrusion on free expression. *Id.* The appellate court reviews questions of standing *de novo*. *Houston v. City, County of Denver, Colorado*, 268 F.3d 942, 947 (10th Cir. 2001).

## <u>ARGUMENT</u>

## I.    CLARK LACKS STANDING TO CHALLENGE ANY PROVISION OF THE CITY'S SIGN CODE OTHER THAN § 4.A.(6) OF ARTICLE 8

Clark's Issue IV, which addresses standing to challenge provisions of Williamsburg's sign code other than § 4.A.(6), should be addressed first. Because no other provision of the code was ever threatened to be enforced against Clark, he lacks standing to challenge those provisions so that it is not necessary to reach Clark's Issues I, II and III.

Article III restricts a federal court's jurisdiction to certain cases and

controversies.  U.S. Const. Art. III.  "'One element of the case-or-controversy

requirement' is that plaintiffs 'must establish that they have standing to sue.'"

*Clapper v. Amnesty Int'l USA*, 560 U.S. 398, 408, 133 S.Ct. 1138, 1145 (2013)

(quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849

(1997)).

The District Court correctly outlined the standing requirements as follows:

> Under Article III of the Constitution, there must be a case
> or controversy before federal courts have jurisdiction.
> *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). "To
> meet this standing requirement, a plaintiff must
> demonstrate 'that (1) he or she has suffered an injury in
> fact; (2) there is a causal connection between the injury
> and the conduct complained of; and (3) it is likely that
> the injury will be redressed by a favorable decision.' " *Id.*
> (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th
> Cir. 1997)); *see also Nat'l Council for Improved Health
> v. Shalala*, 122 F.3d 878, 881 (10th Cir. 1997) (citing
> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61,
> 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
>
> To show an injury-in-fact, a plaintiff must demonstrate
> "an invasion of a legally protected interest which is (a)
> concrete and particularized and (b) actual or imminent,
> not conjectural or hypothetical." *Initiative & Referendum
> Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006)
> (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).
> "Although 'imminence' is concededly a somewhat elastic
> concept, it cannot be stretched beyond its purpose, which
> is to ensure that the alleged injury is not too speculative
> for Article III purposes—that the injury is 'certainly
> impending.' " *Lujan*, 504 U.S. at 564 n.2, 112 S.Ct. 2130
> (internal quotations omitted).

ROA at 1087; *Clark v. City of Williamsburg, Kansas*, 388 F. Supp. 3d 1346, 1355 (D. Kan. 2019).

Clark attempts to challenge several provisions of the sign code which have never been threatened to be applied to him or his property. The only provision of the sign code addressed with Clark was the provision limiting the duration of political signs on the City's right-of-way. Even then, Clark only received a notice requesting voluntary compliance with the restriction on signs and seeking removal of other objects on the City's right-of-way. The notice asked for Clark's "cooperation" and suggested that if the violations were not corrected, "a citation **may** be issued and objects removed from the City easement." (ROA at 239). (Bolding supplied).[1]

The City never pursued enforcement of any provision of the sign code, which would have required compliance with § 10 of the code. Section 10 requires the enforcing officer to "give written notice" which must include an order to

---

[1] The Notice of Violation does not specify a section of the sign code. The District Court interpreted the notice to be based on § 4.A.(6) because language from that section is repeated in the notice. The City had contended that the notice was based on § 5.A. of the code which prohibits any signs on public property. § 4.A.(6) provides exemptions from the absolute exclusion of signs on public property, including permitting political signs for a time before and after elections. Although the City disagrees that Clark established standing to challenge any part of the sign code, because the jury concluded that Clark suffered no compensable damages, the City has not cross-appealed from that decision.

remove the offending sign within ten days, alert the owner to the right to a hearing

before the governing body, and notify the owner that if a hearing is not requested

and the sign not removed, the City will cause the sign to be removed.  The

February 23, 2015 notice was not even the first step in enforcement under § 10,

only a request for voluntary compliance.  No citation was issued nor did the City

send Clark the 10-day notice required to initiate any enforcement action.  Instead,

the City elected not to further pursue the violations at its meeting on March 25,

2015 (Aplee. App. at 105, Trial Exhibit 802).  By midsummer 2015, the City no

longer had a Code Enforcement Officer, nor has it had a code enforcement

mechanism since then.  Eleven days after the District Court's summary judgment

decision, the City passed a motion imposing a moratorium on enforcing any

provision of its sign code pending further analysis of the code.  The City alerted

Clark to its decision.  (Aplee. App. at 106, Trial Exhibit 855).

     Although the District Court concluded that Clark had established an "injury-

in-fact concrete enough to confer standing to challenge Article 8, §4.A.(6)," the

Court correctly concluded that Clark lacked standing to challenge other provisions

of the code.  (ROA at 1089).  Standing to challenge one provision of a law does not

afford standing to challenge other provisions in the absence of the required injury-

in-fact related to those provisions.  *See Essence, Inc. v. City of Federal Heights*,

285 F.3d 1272, 1280–83 (10th Cir. 2002) (Although plaintiffs had standing to

challenge some sections of a nude dancing licensing ordinance, they lacked standing to challenge other provisions in the absence of "real and immediate" threat of injury from enforcement of those sections and the possibility that the city might seek revocation of plaintiff's license under another section was insufficient).

The Supreme Court has long held that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301 (1979). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

Clark's effort to challenge other provisions of the sign code based on alleged subjective chilling of his exercise of speech is insufficient to establish the required injury-in-fact. "The burden to establish standing rests on the party invoking federal jurisdiction." *Essence, supra* at 1280. To prevail at the summary judgment stage, "a plaintiff must establish that there exists no genuine issue of material fact as to justiciability," and "mere allegations" of injury, causation, and redressability are insufficient." *Id.* quoting *Dept. of Commerce v. United States House of Representatives,* 525 U.S. 316, 329, 119 S.Ct. 765 (1999).

"The mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) citing *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004). Only "[w]hen he can show that he faces a 'credible threat of prosecution,'" can a plaintiff sue for prospective relief against enforcement. *Id*. To "satisfy Article III, the plaintiff's expressive activities must be inhibited by 'an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement.'" *Id.* citing *D.L.S.,* 374 F.3d at 975.  As the District Court concluded, Clark's "conclusory claim that he has been chilled" is "insufficient to raise a judicially cognizable injury-in-fact.  (ROA at 1091.  "An allegation of inhibition of speech, without more, will not support standing." *Nat'l Council for Improved Health v. Shalala,* 122 F.3d 878, 884 n. 9 (10th Cir. 1997).  See also *Clapper,* 133 S.Ct. at 1151 (it is not enough to allege a subjective fear of injurious government action, even if that subjective fear is "not fanciful, irrational, or clearly unreasonable.").

*Winsness, supra,* rejected a claim of standing when the plaintiff had not been "cited, prosecuted, or even threatened with citation or prosecution." *Id.*  The District Attorney had stated that he had no intent to prosecute a violation of the

challenged statute until any "constitutional doubts" about the statute were eliminated by amendment or a court decision.  Similarly, the City of Williamsburg declined to further pursue the February 23, 2015 Notice of Violation.  Later, the City acknowledged the Court's finding that § 4.A.(6) was constitutionally deficient by passing a moratorium on enforcement of any part of the sign code pending further analysis of the constitutionality of the code.

Clark knew that Williamsburg had not taken the steps necessary under § 10 of the sign code to initiate enforcement of any section of the code.  Clark's March 18, 2015 "Notice of Anticipated Litigation" argued that the City had not complied with § 10 of the code which required express notice and a hearing procedure before removal of any signs. (Aplee. App. at 10-11; March 18, 2015 Clark letter.)  The City never initiated the notice procedure required to seek enforcement.

The determination whether an objectively reasonable person of ordinary firmness would have been chilled is an objective one which can be resolved as a matter of law.  See *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 481 (M.D. Pa. 2015); *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006); *Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 627 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012).  Clark offered no facts to support an objectively reasonable chill in the exercise of any First Amendment

right caused by a credible threat of enforcement of other provisions of the sign code.  Thus, Clark lacks standing to challenge other provisions of the code.

Clark seeks to avoid standing shortcomings by characterizing his challenge as a facial or "overbreadth" challenge to the sign code.  Clark's attempt to fall within the overbreadth exception to prudential standing requirements fails to recognize that the overbreadth doctrine is "not an exception to the *constitutional* standing requirements."  *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Florida*, 351 F.3d 1112, 1116 (11th Cir. 2003).  While prudential standing requirements may be lessened when a plaintiff has Article III standing, the requirement of Article III standing remains.   As the District Court recognized, Clark's "couching the challenge of those other provisions in terms of an overbreadth challenge does not in and of itself confer standing."  (ROA at 1090).  The overbreadth doctrine "does not dispense with the requirement that the party itself suffer a justiciable injury." *Nat'l Council for Improved Health v. Shalala,* 122 F.3d 878, 882 (10th Cir. 1997).  An overbreadth challenger must still "show its own concrete injury resulting from the challenged statute or regulation." *Id.* at 881.  A "plaintiff bringing a facial challenge to a statute on First Amendment grounds must still satisfy the 'injury-in-fact' requirement in order to demonstrate standing." *Phelps v. Hamilton,* 122 F.3d 1309, 1326 (10th Cir. 1997).

A specific threat to prosecute for violation of the challenged law is required. An allegation that the prosecutor had threatened "to prosecute [plaintiffs] generally is not enough to confer standing." *Phelps* at 1327, citing *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754-55 (1961). The only arguable threat of prosecution ever received by Clark was the February 23, 2015 notice that addressed only items on the City's right of way.  Clark never received any threat of prosecution or even a request for voluntary compliance with any other provision of the sign code and thus lacks standing.

Finally, Clark failed to preserve any of these issues at trial and has failed to provide the necessary trial record necessary.  When a party fails to provide a record sufficient for consideration of an issue, the Court may decline to consider the issue. Tenth Circuit Rule 10.4(B).

### *Clark's Issue I*

Clark argues that the May 9, 2019 decision of the District Court eliminated the only provision in the sign code which permitted political signs and therefore had the unintended effect of prohibiting political signs other than as allowed for a period of time before and after elections by K.S.A. 25-2711. (Aplt. brief at 7-10). It is unnecessary to evaluate Clark's argument.  Within eleven days of the May 9 decision, the City passed a moratorium on enforcement of any provision of its sign code against Clark or anyone else.  Clark lacks standing to challenge the

constitutionality of a code which is not being enforced. See *Winsness v. Yocom*,

433 F.3d 727, 732 (10th Cir. 2006) (no standing to challenge law which prosecutor

declined to prosecute until amendment or judicial review of constitutionality);

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) (prosecutor's declaration that he

would not prosecute plaintiffs under Utah's bigamy statute mooted plaintiffs'

claims). See also *Phelps v. Hamilton, supra* at 1326 (challenge to statute was

mooted by unrelated state court decision that the statute was unconstitutional).

#### Clark's Issue II

Clark is also without standing to press his second issue, a challenge to the

District Court's conclusion that § 4.A.(6) is severable from its other provisions

from the City's sign code. Because the City promptly imposed a moratorium on

enforcement of the code pending additional analysis of its constitutionality,

severance is irrelevant. A code which is not being enforced does not impact Clark.

Clark fails to establish a credible threat of enforcement of the sign code following

the decision severing § 4.A.(6) from the remainder of the code.

#### Clark' Issue III

Clark asserts error in limiting the issue at trial to damages sustained by Clark

as a result of the February 23, 2015 Notice of Violation regarding § 4.A.(6) of the

sign code. He contends that had he been able to challenge the entirety of the sign

code, he could have presented evidence that De La Torre considered a cross and

the mailbox located in the City's right-of-way to violate the code, somehow expanding his damages.

Clark's contention fails for three reasons. First, Clark has failed to provide the necessary trial record to review the evidence presented or excluded to evaluate his claim. Second, Clark agreed to the exclusion of evidence of De La Torre's testimony. Third, the evidence at trial demonstrated that Clark had not taken any action as a result of the notice of violation, regardless whether the notice was limited to § 4.A.(6).

A two-day jury trial was held on July 17 and 18, 2019. (Aplee. App. at 68 [ECF 153]). The jury returned a verdict finding that Clark had not established any compensatory damages. The jury awarded $1 in nominal damages. (Aplee. App. at 96 [ECF 155]). Clark did not order a trial transcript. (Tenth Circuit Doc. 010110251420). Clark failed to preserve any objection to the limitations on the issue tried. He did not object to the jury instruction which directed the jury to decide "whether and to what extent Plaintiff sustained any damages as a result of the City's February 23, 2015 Notice of Violation regarding Article 9, § 4.A(6)" or to the damage instruction. (Aplee. App. at 70 [ECF 154, Jury Instructions 6, 8 and 9]).[2]

---

[2] Although *pro se* now, Clark was represented by counsel at the trial. (Aplee. App. at 55 [ECF 139]).

Clark, as appellant, is required to present the record necessary to review the issue he presents.  *See Carranza v. United States*, 526 F. App'x 882, 885, 2013 WL 2130882, **2 (10th Cir. 2013) (unpublished).  Where the claim is that additional evidence should have been permitted and that such evidence would have changed the verdict, the appellant must provide a complete trial transcript.  Otherwise, the record is inadequate to review "the effect of the alleged new evidence on the district court's verdict."  *Id.  See also United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993) ("The failure to file a transcript ... precludes review of the trial court's evidentiary rulings.). See also *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1147 (10th Cir. 2009) ("[I]f the proponent of the excluded evidence failed to meet the requirements of Rule 103 for an offer of proof, we can reverse 'only in instances of plain error that effected appellant's substantial rights'"). Without the trial transcript, it is impossible to evaluate the evidence Clark was permitted to present or any evidence proffered but excluded. Clark is barred from pursing this claim of error.

Second, Clark waived any claimed error in exclusion of De La Torre's testimony.  Clark contends that he should have been permitted to present evidence of De La Torre's opinion stated in his deposition that certain objects were not allowed in the City's right-of-way.  (Aplt. brief at 16-17).  The Code Enforcement Officer's deposition was taken almost three years after his employment by the City

ended.   The admissibility of the testimony of the former Code Enforcement

Officer regarding the mailbox and a cross or "memorial" was the subject of

defendant's motion in limine.  At the limine conference, plaintiff conceded the

issue.  (Aplee. App. at 57, Motion in Limine, ECF 140, pp. 4-5; Aplee. App. at 67,

Limine Conference Order, ECF 151).

 "The invited error doctrine prevents a party from inducing action by a Court

and later seeking reversal on the ground that the requested action was error."

*United States v. Edward J.*, 224 F.3d 1216, 1222 (10th Cir. 2000).  Clark

abandoned the arguments made in his third issue by conceding the motion in

limine and failing to proffer the excluded evidence at trial.

Third, the evidence at trial demonstrated that Clark had not complied with

the request in the February 23, 2015 notice to remove signs or other objects from

the right-of-way.  The evidence discounted Clark's present contention that he

would have posted other signs elsewhere but for the notice.  The jury effectively

rejected Clark's contention but without a full trial transcript, which Clark is

obligated to provide, this issue cannot be adequately reviewed. "In the absence of a

transcript or a statement of the parties in lieu of a transcript (Fed.R.App.P. 10(c)),

the Court of Appeals will not review an issue, even for plain error."  *United States*

*v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993).

Regardless, Clark does not have standing to challenge other provisions of the Code.

## II. THE DISTRICT COURT PROPERLY CONCLUDED THAT NO FOURTH AMENDMENT SEARCH OCCURRED.

Clark's Fourth Amendment claim is based upon a brief incursion onto Clark's property by De La Torre, who attempted to talk with Clark about the fixtures posted on the City's street right-of-way.  De La Torre performed no search but only sought to contact Clark by walking down his driveway to the rear of Clark's residence, which is the commonly-used entrance to Clark's residence. Although Clark's residence has a front door, that door reasonably appeared to De La Torre to be seldom used.  The front door is accessed through a front porch, enclosed by a railing except at steps at the front.  There is no sidewalk to the steps. There was no path worn in the grass suggesting disuse of the front door. Vegetation overhung the step suggesting disuse and partially blocking the entrance to the porch.  Clark had placed large objects at the entrance to the porch so that the door could be accessed only by squeezing through a narrow space between the objects and the pillars of the porch to reach the front door.

De La Torre followed the commonly-used entrance by walking down the gravel driveway toward the rear of the residence where the driveway expanded onto a gravel apron after he thought he heard Clark in back.  He called for Clark as he approached the rear.  The rear door of Clark's residence was not visible from

De La Torre's location.  Clark had hung a tarp on ropes and had dropped sheets to wall off the area around his rear door.  Clark heard De La Torre call, exited his rear door, walked out of the area concealed by the sheets and found De La Torre.  According to De La Torre, he never left the drive way.  Clark contends that he found De La Torre five to ten feet away from the tarp enclosure on the gravel apron to the driveway.  De La Torre left when asked to leave by Clark.  Clark claims that De La Torre was there five to six minutes total. De La Torre estimates that he was on the property for three to four minutes total.

Clark asserts that De La Torre entered his "curtilage."  The curtilage is "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'"  *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013) (internal citations omitted).  The burden of establishing a legitimate expectation of privacy around a residence or curtilage is on the party claiming a Fourth Amendment violation.  *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir. 2003).  The Supreme Court advises that "curtilage questions should be resolved with particular reference to four factors:  the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."  *United States v. Dunn*, 480 U.S. 294, 301 (1987).

De La Torre was never inside the curtilage of Clark's home. Even by Clark's version of the incident, De La Torre was outside the sheets he had hung, not inside a closed-off area. De La Torre was located at an area that was visible from the road. Clark had not attempted to enclose that portion of his property to protect it from observation. Under the criteria recognized in *Dunn, id.,* De La Torre never entered the curtilage.

Regardless whether De La Torre entered the curtilage, because De La Torre was following the commonly-used method to contact Clark at his residence, no Fourth Amendment violation occurred. A police officer who approaches a front door for the purpose of attempting to contact the resident does not violate Fourth Amendment restrictions on governmental searches. As explained in *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1415-16 (2013), there is an implied license to approach the residence at a common point of contact. Officers do not violate Fourth Amendment restrictions by approaching a rear door when the circumstances suggest that the rear door is the commonly-used access to the residence. In *United States v. Shuck, supra*, the Court rejected the contention that officers had violated the Fourth Amendment by approaching the back door of a trailer home without first knocking on the front door, stating:

> "Even assuming the area traversed by the officers was
> within the curtilage, the officers would not have violated
> the Fourth Amendment by walking up to the back door
> and knocking, as they did here. See, e.g., *Florida v.*

> *Jardines*, 569 U.S. ——, 133 S.Ct. 1409, 1415, 185
> L.Ed.2d 495 (2013) (holding that "there is no doubt that
> the officers entered [the curtilage]" when they entered the
> front porch of the house). The "portion of the curtilage"
> that is "the normal route of access for anyone visiting the
> premises" is only a "semi-private area" on which police
> may set foot if they "restrict their movements to places
> visitors could be expected to go (e.g., walkways,
> driveways, porches)." 1 Wayne R. LaFave et al., Search
> & Seizure § 2.3(f) (5th ed., 2012 update) (footnotes
> omitted). "[O]bservations made from such vantage points
> are not covered by the Fourth Amendment." *Id*.

*Id*., 713 F.3d at 567. Where the evidence showed that by approaching a back door,

officers used the "normal route of access, which would be used by anyone visiting"

the residence, the officers did not violate the Fourth Amendment. *Id*. at 568. *See*

*also Galindo v. Town of Silver City*, 127 Fed. Appx. 459, 466 (10th Cir. 2005)

(unpublished) ("Merely proceeding from the front to the back of a house alone,

however, did not establish an invasion of the curtilage in violation of the Fourth

Amendment."); *United States v. Cavely*, 318 F.3d 987, 994 n. 1 (10th Cir. 2003)

(Same).

Officers "are allowed to knock on a residence's door or otherwise approach

a residence seeking to speak to the inhabitants just as any private citizen may."

*Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3rd Cir. 2003). "Their approach is

not restricted to the front door. If it appears that someone is in or around a house,

officers may take reasonable steps to initiate contact by going to other areas of the

property." *United States v. Diaz*, 2009 W.L. 3675006, at *2 (N.D. Fla. October 30,

2009, affirmed 404 Fed. Appx. 381 (11th Cir. 2010) (unpublished). Officers are permitted to go to the backyard or the back door to speak to an occupant believed to be home. *Hardesty v. Hamburg Township*, 461 F.3d 646, 654 (6th Cir. 2006). Officers are not required to initially attempt to contact a resident through the front door when, as with Mr. Clark's residence, the front door does not appear to be the common point of access. See *United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990) (if front door is inaccessible, "there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as a part of a legitimate attempt to interview a person."); *United States v. Freeman*, 426 F.2d 1351, 1352-53 (9th Cir. 1970) (no search occurred when officers climbed stairs to the rear which provided access to both the rear and front of second-floor apartments); *United States v. Garcia*, 997 F.2d 1273 (9th Cir. 1993) (officers did not perform a Fourth Amendment search by going to the back porch when they had a subjective good faith belief that they were going to the front door based upon information from an apartment manager and appearances); *Alvarez v. Montgomery County*, 147 F.3d 354 (4th Cir. 1998) ("Other circuits likewise have found that the Fourth Amendment does not invariably forbid an officer's warrantless entry into the area surrounding a residential dwelling even when the officer has not first knocked at the front door."); *United States v. Garcia*, 997 F.2d 1273, 1279–1280 (C.A.9 1993) ("If the front and back of a residence are readily accessible from a

public place, like the driveway and parking area here, the Fourth Amendment is not implicated when officers go to the back door reasonably believing it is used as a principal entrance to the dwelling").  See also *Carroll v. Carman,* __ U.S. __, 135 S.Ct. 348 (2014) (discussing but not deciding whether an officer may approach an entrance open to visitors other than the front door in context of evaluating qualified immunity defense).

Because De La Torre never left the driveway, never entered any "curtilage" of Clark's residence and never performed any search subject to Fourth Amendment restrictions, his three to four-minute entry onto Clark's property in an effort to talk with Clark did not implicate the Fourth Amendment.

De La Torre's momentary presence after Clark revoked the implied consent was not unreasonable.  Clark acknowledges that only ten to 15 seconds expired between each of the requests he claims to have made that De La Torre leave. (ROA at 709, Clark dep. 55:11-20).  Even if 15 seconds elapsed between each claimed request, the total time from the first request until the last would have only been 30 seconds if three requests and 45 seconds if four.  Whether De La Torre left immediately upon being requested to leave, as De La Torre testified, or 45 seconds after Clark's request as Clark testified, De La Torre departed promptly.  See *Manzanares v. Higdon*, 575 F.3d 1135, 1143 (10th Cir. 2009) (noting that officers should have "promptly" departed after revocation of consent).

Clark asserts that there "should be no dispute that 'seeking information' constitutes a search for purposes of the Fourth Amendment." (Aplt. Brief at 31). However, as noted by the dissent in *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409 (2013), a "knock and talk" has as its purpose discovering information but a "knock and talk" is not a search because "all are invited to do that." 133 S.Ct. at 1424. De La Torre's attempt to visit with plaintiff was not a search because he did no more than what "all are invited" to do by attempting to contact plaintiff in a manner that did not deviate from the implied invitation.

Clark quibbles with two points in the District's Court summary judgment decision. First, he contends that the Court leaped a "giant chasm" in concluding that there was "no path" from the admitted facts that there was no sidewalk and no worn path to the front porch. (Aplt. Brief at 33). Clark presented no evidence that there was a gravel path, a stepping stone path, a brick path, or any other form of path to his front porch. The photographs are clear that the front porch was disused and that there was no path of any sort to the front porch.



CITY 000061



ROA at 543 and 547.

Although Clark recognizes that the issue is whether the officer was using the "normal route of access for anyone visiting the premises," his argument suggests an attempt to impose a more difficult standard that it was impossible to access the front door, rather than that the front door reasonably appeared to be disused and not the normal route of access. The front door need not be physically impossible of access.

Secondly, Clark complains that the fact that he trained his nephew to use the back door should lead to an inference that the front door was the normal path of access. His argument does not detract from the fact that all visible indications to those approaching Clark's residence were that the front door is disused with the rear being the normal route of access.

The District Court properly granted summary judgment on Clark's Fourth Amendment claim because the Code Enforcement Officer did not deviate from the way that any visitor to Clark's property would assume to be the normal method of contacting Clark.

## CONCLUSION

The District Court permitted Clark a trial on his claim for damages caused by receipt of the February 23, 2015 Notice of Violation, the only attempt by the City to obtain compliance with the sign code's restriction of political and other signs on its right-of-way ever received by Clark. The jury rejected Clark's contention that he had suffered substantial damages and awarded $1 nominal damages. Clark lacks standing to challenge other provisions of the sign code. He was never threatened with enforcement of any other provision. Clark's Fourth Amendment claim fails because the undisputed facts established that De La Torre never engaged in a search subject to the Fourth Amendment. The District Court's decisions should be affirmed.

## <u>STATEMENT OF COUNSEL AS TO ORAL ARGUMENT</u>

Appellee does not request oral argument but offers to appear if further

argument will assist the Court or if appellant presents argument.

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 S.W. 5th Street
Topeka, KS 66606
(785) 232-7761-Office / (785) 232-6604-Fax
E-mail: spigg@fisherpatterson.com


/s/ J. Steven Pigg
J. Steven Pigg, #09213
**Attorney for Defendant/Appellee**
**City of Williamsburg, Kansas**

## CERTIFICATE OF DIGITAL SUBMISSION

No privacy redactions were necessary in this document.  The document submitted in digital form is an exact copy of the written document filed with the Clerk.  The document is a native PDF document. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Managed Antivirus, Version 6.6.13.184, most recently updated on December 19, 2019, and according to the program is virus free.

## STATEMENT OF COMPLIANCE OF TYPEFACE

The Brief of Appellee filed today is in compliance with the typeface requirements of Fed.R.App.P. 32(a)(5), the type style requirements of Fed.R.App.P.32(a)(6), and 10th Cir. R. 32(a) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in Times New Roman font size 14.

## CERTIFICATE OF COMPLIANCE

The words in the foregoing brief, exclusive of the cover, table of contents, table of authorities, signature block, and the certificates of service and compliance, have been counted via use of Word 2016. The portions of the brief not specifically excluded above contains 6,793 words.

/s/ J. Steven Pigg
J. Steven Pigg

## CERTIFICATE OF SERVICE

The hereby certify that on December 19, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: no one.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to *pro se* plaintiff-appellant as follows:

Eric S. Clark
1430 Dane Ave.
Williamsburg, KS 66095

I further certify that seven (7) true and correct copies will be sent by overnight delivery on December 20, 2019 to:

U.S. Court of Appeals, Tenth Circuit
Office of the Clerk
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

/s/ J. Steven Pigg
J. Steven Pigg